UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TETRA K. HARRISON,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:19-cv-253

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION (AND WITH INSTRUCTIONS TO HOLD ANOTHER ADMINISTRATIVE HEARING IN 30 DAYS OR LESS); AND (3) THIS CASE BE CLOSED**

---

    This is a Social Security disability benefits appeal with a lengthy procedural history. As explained in more detail below, the evidence is overwhelming and undisputed that Plaintiff meets the legal criteria for a finding of disability. Nonetheless, because the Administrative Law Judge ("ALJ") did not make a determination as to whether or not Plaintiff's substance abuse disorder "is a contributing factor material to the determination of [her] disability," 20 C.F.R. § 416.935, a remand for additional fact finding by the ALJ must occur. The Court's expectation is that this administrative process will occur within a 30-day period or less, as Social Security disability decisions -- regardless of the outcome -- should not take eight years, as did this case. *Cf. Webb v. Richardson*, 472 F.2d 529, 538 (6th Cir. 1972) ("[E]very effort should be made to resolve [Social Security disability cases] expeditiously"), *overruled on other grounds by Horenstein v. Sec'y of*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

*Health & Human Servs.*, 35 F.3d 261 (6th Cir. 1994)  Justice is not served when delays of this nature occur.

# I.

At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI").  This case is before the Court upon Plaintiff's Statement of Errors (doc. 12), the Commissioner's memorandum in opposition (doc. 15), the administrative record (doc. 9),[2] and the record as a whole.

### A. Procedural History

Plaintiff filed an application for SSI on March 22, 2012[3] -- over eight years ago -- alleging disability as a result of a number of alleged impairments including, *inter alia*, fibromyalgia, asthma, bipolar disorder, depression, anxiety, and substance abuse disorder.  PageID 261-66, 2710.  After initial denial of her application, Plaintiff received a hearing before ALJ Elizabeth Motta on July 18, 2013.  PageID 73-114.  ALJ Motta issued a written decision on November 27, 2013 finding Plaintiff not disabled.  PageID 64-74.

After the Appeals Council denied her request for review, Plaintiff appealed ALJ Motta's decision to this Court, which reversed the non-disability finding and remanded the case to the ALJ for further proceedings.  *Harrison v. Colvin*, No. 3:14CV00218, 2015 WL 3645838, at *1 (S.D. Ohio June 10, 2015), *report and recommendation adopted*, No. 3:14CV00218, 2015 WL 4549460

---

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

[3] Plaintiff filed a previous application for SSI on October 1, 2007.  *See* PageID 153.  ALJ McNichols issued a decision on November 18, 2010 finding Plaintiff not disabled.  PageID 153-63.  The Appeals Council denied review of ALJ McNichols's decision and Plaintiff did not file a subsequent appeal, thus making ALJ McNichols's decision the final decision with regard to Plaintiff's previous SSI application.  PageID 168.

(S.D. Ohio July 27, 2015).[4] In reversing the non-disability finding at that time, the Court concluded that ALJ Motta "misperceived the nature of fibromyalgia" when weighing the opinion of Nagah Elarossi, M.D. -- a staff physician at a community health center where Plaintiff sought treatment for her medical conditions. *Id*. at *2, 6-7.

On remand, Plaintiff received another hearing before ALJ Motta. PageID 1440-68. ALJ Motta issued a written decision on July 20, 2016 finding Plaintiff not disabled. PageID 1381-1405. After the Appeals Council again denied Plaintiff's request for review, she appealed ALJ Motta's second decision to this Court. PageID 2851-52. The Court reversed ALJ Motta's non-disability finding and remanded the matter for further proceedings after the parties jointly moved for such remand. *Id.*

On remand the second time, Plaintiff received a hearing before ALJ Laura Twilley-Roberts on February 20, 2019. PageID 2758-2802. ALJ Twilley-Roberts (hereinafter referred to solely as "the ALJ") issued a decision on April 18, 2019 finding Plaintiff not disabled. Specifically, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a reduced range of sedentary work,[5] "there are jobs that exist in significant numbers in the national economy that [she] can perform[.]" PageID 2718-41. This time, Plaintiff did not seek Appeals Council review of the ALJ's decision and, instead, timely filed this appeal. *See* 20 C.F.R. § 416.1484(c) and (d) (in a case remanded by a Federal Court, "[i]f no exceptions are filed and the Appeals Council does not assume jurisdiction of [the] case, the decision of the [ALJ] becomes the final decision of the Commissioner after remand").

---

[4] While this appeal was pending in this Court, Plaintiff filed another application for SSI on January 6, 2015. PageID 1754. On remand from this Court, the Appeals Council deemed Plaintiff's January 2015 application duplicative of her March 2012 application and consolidated the two applications in to this single proceeding. PageID 1603.

[5] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 416.967(a).

3

### B. Evidence of Record

The evidence of record is adequately summarized in the ALJ's decision (PageID 2706-42), Plaintiff's Statement of Errors (doc. 12), and the Commissioner's memorandum in opposition (doc. 15). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

  **B.**  **"Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?;

2. Does the claimant suffer from one or more severe impairments?;

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?;

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?; [and]

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 416.920(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff asserts that the ALJ erred in weighing the medical source opinion evidence of record. Under the regulations in effect prior to March 27, 2017 and applicable to Plaintiff's application for benefits at issue here, the opinions of treaters are entitled

5

to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 416.927(c)(2).

Thus, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinions, consistency of the opinions with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 416.927(c).

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9.

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

### A. Nagah Elarossi, M.D.

Plaintiff first argues that the ALJ erred in weighing the opinion of Dr. Elarossi, a physician who saw Plaintiff only once before she rendered her opinion. Doc. 12 at PageID 3216. In that opinion, issued on April 26, 2012, Dr. Elarossi found that Plaintiff was limited to standing a total

of one hour per workday; sitting for two hours per workday; lifting up to ten pounds frequently; and was moderately limited in her ability to bend and to hear.  PageID 487.

The ALJ essentially found Dr. Elarossi's opinion entitled to no weight.  PageID 2732-33.  In so concluding, the ALJ focused on the nature and extent of Dr. Elarossi's treatment relationship with Plaintiff, explaining that Plaintiff "saw Dr. Elarossi only once before she authored the very limiting opinion and a second time on the day she authored the opinion" -- thus, questioning her status as a treating physician at the time the opinion was offered.  PageID 2733.  Ultimately, the ALJ found that, because Dr. Elarossi's records up to the time she issued her opinion did not reflect findings supportive of the marked or extreme limitations, and because she lacked a specialization in neurology, her opinion could not be relied upon in assessing Plaintiff's RFC.  PageID 2732-34.

Plaintiff takes issue with the ALJ's questioning of Dr. Elarossi's status as a treating physician.  Doc. 12 at PageID 3217-18.  The undersigned notes that the ALJ's conclusion regarding Dr. Elarossi's status as a treating physician is a bit unclear.  In this regard, the ALJ concluded that Dr. Elarossi was "not necessarily a treating source as of the date of her opinion," but nevertheless -- perhaps in an abundance of caution -- specifically analyzed her opinion for controlling weight and concluded that it was not entitled to such weight.  PageID 2732-33.  While an argument could be made that the ALJ failed to properly explain her controlling weight finding, the undersigned would find any such error harmless because substantial evidence supports the ALJ's conclusion that Dr. Elarossi was not a treating physician as of the date she rendered her opinion.

A "treating physician" is a Social Security claimant's "own physician, psychologist, or other acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" the plaintiff.  20 C.F.R. § 416.902.  An acceptable medical source who has only treated a claimant "a few times or

7

only after long intervals" can be considered a treating physician only "if the nature and frequency of the treatment or evaluation is typical for [the claimant's] condition." *Id*.

Whether one qualifies as a treating physician is a determination to be made "at the time [the medical source] rendered [her] opinion." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (emphasis omitted).  A medical source who saw a claimant on only two occasions prior to giving an opinion is generally not a treating medical source where the claimant sought treatment from other medical sources with regularity. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 491 (6th Cir. 2005).

As noted by the ALJ, Plaintiff sought routine treatment for pain from other medical sources prior to the time she began her treatment relationship with Dr. Elarossi.  *See* PageID 2720 (noting routine office visits for pain prior to June 28, 2011); PageID 400-17 (recording office visits for various pain complaints throughout 2010 and 2011).  Accordingly, insofar as the ALJ concluded that Dr. Elarossi was not a treating medical source, such conclusion is supported by substantial evidence.

Because substantial evidence supports the ALJ's conclusion that Dr. Elarossi was not a treating physician at the time she rendered her opinion on April 26, 2011, the ALJ did not need to make a controlling weight determination at all.  "[O]pinions from nontreating and nonexamining sources are never assessed for "controlling weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  Instead, opinions offered by nontreaters are weighed based upon consideration of, *inter alia*, the "[l]ength of the treatment relationship"; the "[n]ature and extent of the treatment relationship"; medical and signs and laboratory findings presented by the medical source; the explanation provided by the medical source in support of an opinion; the consistency of an opinion with the record; and the "[s]pecialization" of the medical source. *See* 20 C.F.R. § 416.927(c).

8

Here, the ALJ appropriately focused on the length, nature, and extent of the treatment relationship, the lack of medical findings noted by Dr. Elarossi in her treatment records, and Dr. Elarossi's lack of specialization in neurology. Because the ALJ's conclusions as to these factors is supported by substantial evidence, the ALJ's weighing of Dr. Elarossi's opinion should be affirmed.

B.     **Mental Health Treating Sources**

Plaintiff next alleges error in the ALJ's weighing of opinion evidence offered by treating psychiatrists Kalpana Vishnupad, M.D. and Sunita Agarwal, M.D. PageID 3220. For the reasons set forth below, the undersigned finds error in the ALJ's analysis of these treating mental health medical sources and further finds error in the ALJ's conclusory weighing of opinions offered by record-reviewing psychologists Aracelis Rivera, Psy.D. and Janet Souder, Psy.D. Given the fact that the record contains objective signs supportive of the opinions offered by treating psychiatrists Drs. Vishnupad and Agarwal, and in light of the fact that their opinions are consistent with each other and the record as a whole, the undersigned concludes that they are entitled to controlling weight.

Dr. Vishnupad issued an opinion on April 22, 2013 concluding that Plaintiff suffered from numerous marked or extreme impairments[6] in her ability engage in work-related activities because of her mental impairments. PageID 1164-66. Dr. Vishnupad also concluded that Plaintiff would likely be absent from work five or more days per month as a result of her mental impairments *Id*. The ALJ gave Dr. Vishnupad's opinion little weight because, in her view, "Dr. Vishnupad's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and his opinion is inconsistent with other substantial evidence" of record. PageID

---

[6] "Moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq.; Holland v. Comm'r of Soc. Sec.*, No. 3:14-CV-246, 2015 WL 6891032, at *4 (S.D. Ohio July 6, 2015).

2736. According to the ALJ, Plaintiff's treatment records "do not reveal the level of incapacity or limitations recited by Dr. Vishnupad"; Global Assessment of Functioning ("GAF") scores[7] "between 48 and 62" and "consistently in the 50s . . . are [in]consistent with the marked and extreme limitations supplied"; and treatment records in April 2013 note "no objective observations[.]" *Id*.

Similar to Dr. Vishnupad, Dr. Agarwal also opined in June 2016 that Plaintiff suffered from marked or extreme impairments in her ability to engage in work-related activities, and that Plaintiff would likely be absent from work five or more times per month because of her mental health impairments. PageID 2692-94. As she did in weighing Dr. Vishnupad's opinion, the ALJ gave Dr. Agarwal's opinion little weight, finding her opinion "is not well-supported by medically acceptable clinical laboratory diagnostic techniques and her opinion is inconsistent with other substantial evidence" of record. PageID 2737.

Initially, the undersigned finds the ALJ's conclusion -- that the opinions of these treaters are "not well-supported by medically acceptable clinical laboratory diagnostic techniques and her opinion is inconsistent with other substantial evidence" of record -- unsupported by substantial evidence. According to the Sixth Circuit, "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment" and "consequently, the

---

[7] GAF is a tool used by healthcare professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity... and questionable psychometrics in routine practice"). As set forth in the DSM-IV, a GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. A GAF score of 51-60 is indicative of "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*.

diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citation and alterations omitted). With regard to mental health impairments, "clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Id.* (citation omitted).

Numerous clinical findings, documented throughout the record, are supportive of these treaters' opinions. Specifically, the record contains mental status exam notes recording: pressured speech; disheveled appearance; poor hygiene; agitated psychomotor activity; easy distraction; loud and verbose speech; dramatic effect; impaired memory; remote memory impairment; immediate recall impairment; recent memory impairment; variable affect and mood; depressed and anxious mood; pressured speech; fair to limited insight; limited judgment; impaired, self-depreciating thought content; obsessive thought content; paranoid thought content; auditory hallucinations; dramatic affect; labile mood; increased worry and anxiety; rapid speech; trouble sitting still; and tearfulness. PageID 455, 465, 474-75, 480, 482-83, 711, 1365, 2146-47, 2684, 2695-96; 2699. In light of these mental status findings, the ALJ's conclusion in this regard is unsupported by substantial evidence.

Further, it is not clear to the undersigned how the ALJ could conclude that the opinions of Drs. Vishnupad and Agarwal are inconsistent with other substantial evidence of record when their opinions are not only consistent with each other and the foregoing clinical findings, but are also consistent with other opinion evidence offered by mental health treatment providers. For instance,

11

Necol Jackson, L.P.C.[8] -- who personally examined Plaintiff for treatment purposes, *see* PageID 1364 -- opined that Plaintiff's ability to engage in work-related activities on a day-to-day basis was markedly or extremely impaired in numerous areas, and that Plaintiff was likely to be absent from work five or more days *per week* as a result of her mental impairments. PageID 1160. Another source, albeit unidentified in the record,[9] opined that Plaintiff is markedly impaired in numerous areas of mental functioning. PageID 391. Finally, counselor Mark Schweikert -- who provided mental health counseling to Plaintiff, *see* PageID 2518, 2520 -- opined that she "has issues with mental health and medical issues which make it not possible for her to work" and, in fact, "[s]he will not be able to work permanently due to her mental health issues and medical problems."[10] PageID 2502.

The only medical source opinions of record weighed favorably by the ALJ in assessing Plaintiff's mental health limitations are those opinions offered by non-examining record reviewing psychologists, Drs. Rivera and Souder. PageID 1544, 1555. Neither psychologist issued any

---

[8] In addition to "medical source opinions," opinions from "other sources" can be used to establish the severity of a claimant's impairment and establish how impairments affect a claimant's ability to work. 20 C.F.R. § 416.913(d). "Other sources" include medical sources such as nurse practitioners or counselors. *Id*. Although opinions from "other medical sources" who have treated a claimant are not entitled to controlling weight like those of a treating physician or psychologist, "other source" opinions may be entitled to more weight than "acceptable medical sources" under the unique circumstances of a given case. *See* Soc. Sec. Ruling ("SSR") 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006). In fact, the opinions of "other sources" may even be given more weight than a treating physician if the "other sources" have seen the claimant more frequently than the "acceptable sources" and have provided better explanations for their opinions. *Id*. An ALJ must weigh the opinions of "other sources" using the factors set forth in 20 C.F.R. § 416.927(c), *i.e.*, "how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment." *Williamson v. Comm'r of Soc. Sec.*, No. 1:14-cv-731, 2016 WL 255033, at *8 (S.D. Ohio Jan. 20, 2016); *see also* 20 C.F.R. § 416.927(c).

[9] In her decision dated November 27, 2013, ALJ Motta attributed this opinion to Jamie Eubanks-Colger, L.P.C.C., who appears to have provided mental health counseling to Plaintiff at Mental Health Services for Clark and Madison Counties, Inc. *See* PageID 460, 1521.

[10] The undersigned acknowledges that the determination of disability is an issue reserved for the Commissioner and that opinions in that regard are not entitled to any special significance. *Cf*. Soc. Sec. Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (July 2, 1996). Nevertheless, the fact remains that Counselor Schweikert's opinion is consistent with the disabling opinions given by Plaintiff's other treating mental health providers.

independent opinion regarding Plaintiff's mental impairments and, instead, appear to have simply defaulted to opinions offered by previous record reviewers in conjunction with Plaintiff's prior SSI application. *See* PageID 179, 191, 1544, 1554-55. The absence of any specific analysis by the ALJ in weighing these opinions is error as a matter of law, *see Marks v. Colvin*, 201 F. Supp. 3d 870, 884 (S.D. Ohio 2016), and evidences the ALJ's application of great scrutiny to treating opinions, which "is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379 ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires").

Insofar as the ALJ found GAF scores of record belie the treaters' opinions, the Court notes that a GAF score is merely a "snapshot of a person's 'overall psychological functioning' at or near the time of evaluation[,]" and its relevance "is isolated to a relatively brief period of time[.]" *Laning v. Comm'r of Soc. Sec.*, No. 3:15-CV-75, 2016 WL 1729650, at *6 (S.D. Ohio Mar. 28, 2016) (citing *White v. Colvin*, No. 3:13CV00171, 2014 WL 2813310, at *10 (S.D. Ohio June 23, 2014)). As a result, GAF scores have "little value in assessing disability[,]" *id.*, and it is generally improper for an ALJ to rely on a GAF score to discredit a medical source's specific opinion about an individual's work-related abilities and limitations. *Mosley v. Comm'r of Soc. Sec.*, No. 3:14-CV-278, 2015 WL 6857852, at *5 (S.D. Ohio Sept. 14, 2015) (citations omitted). Nevertheless, the record reflects GAF scores of 48 and 50 -- both of which indicate "serious symptoms," *see supra* -- and it is unclear to the undersigned why such GAF scores fail to support the opinions finding that Plaintiff has marked or extreme impairment in her ability to perform work-related functions. *See* PageID 458, 474, 712, 1364, 2151, 2162.

Finally, insofar as the ALJ relies on the lack of "objective observations" made during mental status examinations in April 2013, the ALJ's conclusion in this regard is false. Specifically, during her office visit on April 22, 2013, Plaintiff displayed an anxious mood on mental status

13

examination, a finding that is consistently noted during mental status examinations throughout the entire record. *See* PageID 1192; *see also* PageID 455, 465, 474-75, 480, 482-83, 711, 1365, 2146-47, 2684, 2695-96; 2699. Even assuming the ALJ's finding in this regard is supported by substantial evidence -- which it is not -- it is unclear to the undersigned how a single mental status exam (or even a few such examinations over years of treatment) could suffice to render a treater's opinion inconsistent with the record as a whole. Instead, such a conclusion evidences a failure "to consider the nature of mental health impairments, *i.e.*, that the symptoms of such impairments wax and wane from day-to-day." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 923 (S.D. Ohio 2016).[11]

Based on all of the foregoing, the undersigned concludes that substantial evidence does not support the ALJ's opinion regarding Plaintiff's mental health limitations. Accordingly, the ALJ's non-disability finding should be reversed.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation

---

[11] The undersigned finds it important to note here that Plaintiff suffers from a number of severe mental health impairments, including bipolar disorder which, "[b]y its very nature . . . fluctuates between manic and depressive states with periods of apparent stability." *Evans v. Comm'r of Soc. Sec.*, No. 4:18CV147-JMV, 2019 WL 4018345, at *2 (N.D. Miss. Aug. 26, 2019) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders at 386 (Text Revision 4th ed. 2000) (recognizing that persons with a bipolar disorder experience mood shifts from high to low and back again in varying degrees of severity).

of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Here, the undersigned concludes that proof of Plaintiff's disabling mental limitations is strong and overwhelming, and that evidence in opposition lacks substance.  Accordingly, affording controlling weight to the opinions of treating psychiatrists Dr. Vishnupad and Agarwal, Plaintiff is disabled because, *inter alia*, an individual would not be able to maintain full-time employment if he or she missed "more than one day per month repetitiously."  PageID 2800.

However, because the record contains evidence of Plaintiff's substance abuse, a remand is necessary to determine whether Plaintiff's substance abuse disorder "is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935.  Accordingly, on remand the ALJ should reassess Plaintiff's RFC in light of the controlling weight to be accorded the opinions of Drs. Vishnupad and Aggarwal and then make a determination as to whether Plaintiff's substance abuse disorder "is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935.  Regrettably, Plaintiff's application for SSI has been pending for over eight years and finality on the issue of her entitlement to SSI benefits is desperately needed.  As a result, the undersigned would direct that, on remand, further proceedings be held forthwith.

## V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion -- including a directive to the Commissioner to hold another hearing forthwith (*i.e.,* within 30 days); and

3. This case be **CLOSED**.

15

Date:  July 8, 2020                                             s/ Michael J. Newman
                                                                                    Michael J. Newman
                                                                                    United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).